Slip-Op. 12-132

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ESSAR STEEL LIMITED, | |
| Plaintiff, | |
| v. | Before: Judith M. Barzilay, Senior Judge |
| UNITED STATES | Court No. 09-00197 |
| Defendant, | |
| and | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant-Intervenor. | |

## __OPINION__

[Commerce's AFA rate calculation is remanded for further explanation.]

Dated: October 15, 2012

*Arent Fox LLP* (*Mark P. Lunn and Diana Dimitriuc Quaia*) for Plaintiff Essar Steel Limited.

*Stuart F. Delery*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David D'Alessandris*) for Defendant United States; *Deborah King*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for Defendant.

*Skadden Arps Slate Meagher & Flom, LLP* (*Robert E. Lighthizer, Jeffrey D. Gerrish, Stephen J. Narkin,* and *Nathaniel B. Bolin*) for Defendant-Intervenor United States Steel Corporation.

BARZILAY, Senior Judge:  This matter returns to the court following a decision by the

Court of Appeals for the Federal Circuit affirming in part and reversing in part this court's

decision in *Essar Steel Ltd. v. United States*, 2011 WL 238657 (Jan. 25, 2011). *See Essar Steel*

*Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) ("*Essar*"). After the Federal Circuit issued

its mandate, Plaintiff Essar Steel Limited ("Essar") contacted the court for guidance with regard

to two issues it believed were unresolved: (1) whether Commerce corroborated the adverse facts

available ("AFA") rate assigned to Essar for its participation in the State Government of

Chhattisgarh Industrial Policy ("CIP") [1]; and (2) whether that rate was punitive. Although the

parties argued these issues in their briefs before the Court of International Trade, the court did

not reach them in its initial decision remanding the case back to Commerce. *See Essar Steel*

*Ltd.v. United States*, 34 CIT __, __, 721 F. Supp. 2d 1285, 1300 (2010). The court then sustained

the remand results without deciding the issues discussed above. *See Essar Steel Ltd.*, 2011 WL

238657. The parties appealed that decision. Accordingly, the issues of corroboration and whether

the AFA rate is punitive were not before the Federal Circuit.

        The Federal Circuit, however, in its decision affirming Commerce's application of AFA,

observed that "the countervailing duty imposed for Essar's participation in the CIP <u>was on par</u>

<u>with similar subsidy programs and therefore not punitive</u>. Commerce did not err in its application

of adverse facts, and no party argues that the application of adverse facts based on the record

before the remand was punitive." *Essar*, 678 F.3d at 1276 (emphasis added). Although this

language could be construed as having decided the issues presented here, the parties concede,

and the court agrees, that it did not. *See* Letter from David F. D'Alessandris, Trial Attorney, U.S.

Department of Justice, to Judith M. Barzilay, Senior Judge, U.S. Court of International Trade,

Docket Entry No. 93 (Sept. 11, 2012); Letter from Mark P. Lunn, Attorney, Arent Fox LLP, to

---

[1] The CIP provides incentives to accelerate the process of industrialization in the state. It is a subsidy that Commerce has deemed countervailable. *See Certain Hot-Rolled Carbon Steel Flat Products from India*, 74 Fed. Reg. 20,923 (Dep't Commerce May 6, 2009) (final results CVD review) ("*Final Results*"); *see also Issues and Decision Memorandum: Final Results and Partial Rescission of Countervailing Duty Administrative Review, Certain Hot-Rolled Carbon Steel Flat Products from India* at 3-4, 22 (Apr. 29, 2009) ("*Decision Memorandum*"), *available at* http://ia.ita.doc.gov/frn/summary/INDIA/E9-10496-1.pdf.

Judith M. Barzilay, Senior Judge, U.S. Court of International Trade, Docket Entry No. 94 (Sept.

14, 2012). The question before the Federal Circuit was limited to whether it was appropriate for

Commerce to apply AFA to Essar for its participation in the CIP programs. That court decided it

was. *See Essar*, 678 F.3d at 1279. Whether the specific AFA rate was uncorroborated or perhaps

even punitive has not been decided by this court or the Federal Circuit. Therefore, this court must

consider these issues to bring this case to a close. The court, though, must first determine

whether a remand is necessary for Commerce to consider the issue of corroboration in the first

instance. The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## I. STANDARD OF REVIEW

When reviewing Commerce's countervailing duty determinations under 19 U.S.C. §

1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains

Commerce's "determinations, findings, or conclusions" unless they are "unsupported by

substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §

1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or

conclusions for substantial evidence, the court assesses whether the agency action is "reasonable

and supported by the record as a whole." *Nippon Steel Corp. v. United States*, 458 F.3d 1345,

1352 (Fed. Cir. 2006) (internal quotations and citation omitted). Substantial evidence has been

described as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Dupont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence has also

been described as "something less than the weight of the evidence, and the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S.

607, 620 (1966).

## II. DISCUSSION

This case involves an administrative review of a countervailing duty order covering Certain Hot-Rolled Carbon Flat Products from India. *See Final Result*, 74 Fed. Reg. 20,923. In the *Final Results*, Commerce found that Essar had failed to cooperate by not acting to the best of its ability to comply with a request for information about its participation in the CIP programs, justifying application of adverse facts available. *See Decision Memorandum* at 6. Although Commerce attempted to calculate an individual rate for Essar based on the benefit received from the CIP programs, it was unable gather the necessary information from respondents, and therefore relied on secondary information to derive a rate. *See id*. Specifically, Commerce used the highest above *de minimis* subsidy rate calculated for similar programs (from prior proceedings) involving grants, the provision of goods for less than adequate remuneration (LTAR), and indirect taxes. *See id.* at 22-26. Commerce explained its methodology for calculating the AFA rate assigned to Essar for its participation in the CIP programs but did not discuss the specific issue of corroboration. *See id.* at 3, 6, 22-26.

Essar claims that Commerce failed to corroborate the AFA rate that it calculated for Essar's participation in the CIP programs. Pl. Br. 33; Pl. Reply 10. Specifically, Essar argues that Commerce failed to establish the relevance of the rate assigned to Essar as a reasonably accurate estimate of its actual rate. Pl. Br. 36-37 (citing *Fujian Lianfu Forestry Co. v. United States*, 33 CIT __, __, 638 F. Supp. 2d 1325, 1336 (2009)). Essar also argues that Commerce cannot assume that the highest rate from a prior proceeding is reliable and relevant. Pl. Br. 37. The crux of Essar's claim is that the AFA rate for the CIP programs is unreasonable because Commerce did not tie the selected rate to Essar.

In *Fujian Lianfu Forestry Co., Ltd. v. United States*, 33 CIT __, __, 638 F. Supp. 2d 1325, 1334 (2009) ("*Fujian*"), the court summarized the corroboration requirement:

> When applying a total AFA rate, Commerce shall, "to the extent
> practicable," corroborate that rate "from independent sources that are reasonably
> at [its] disposal." 19 U.S.C. § 1677e(c). The statute does not prescribe any
> methodology for corroborating a total facts available rate, but the regulations state
> that corroborate "means that the Secretary will examine whether the secondary
> information to be used has probative value." 19 C.F.R. § 351.308(d) (parroting
> Uruguay Round Agreements Act Statement of Administrative Action, H.R.Rep.
> No. 103–316, vol. 1 at 870 (1994), reprinted in 1994 U.S.C.C.A.N. 3773, 4199).
> A total facts available proxy rate should therefore have probative value of a
> "reasonably accurate estimate of the respondent's actual rate, albeit with some
> built-in increase intended as a deterrent to noncompliance." *De Cecco*, 216 F.3d
> at 1032. As a general matter, Commerce assesses the probative value of secondary
> information by examining its reliability and relevance. *See Ball Bearings and
> Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United
> Kingdom*, 70 Fed.Reg. 54, 711, 54,712–13 (Sept. 16, 2005) (final results). For
> specific secondary information like a total facts available proxy, the corroboration
> analysis therefore depends on whether the proxy is a reliable and relevant
> indicator that satisfies the *De Cecco* standard.

*Id.* The *Fujian* court, albeit in the context of an antidumping proceeding, issued a remand

because Commerce's "attempted corroboration never explains whether the selected proxy

is a reliable and relevant indicator of a 'reasonably accurate estimate of [respondent's]

actual rate, albeit with some built-in increase intended as a deterrent to noncompliance.'

In short Commerce never ties the rate to [respondent]." *Id.* at 1336 (quoting *F.lli De

Cecco Di Filippo Fara S. Martino S.p.A v. United States*, 216 F.3d 1027, 1032 (Fed. Cir.

2000) ("*De Cecco*").

        Although this action involves a CVD proceeding, the corroboration requirement applies

equally to both, *see* 19 U.S.C. 1677e(c). When Commerce resorts to secondary information (in

either a CVD or antidumping proceeding), Commerce must corroborate that information, or

explain why such corroboration is not practicable. *See id*. Here, although Commerce used

secondary information to calculate Essar's AFA rate, Commerce did not discuss corroboration.

*See Decision Memorandum* at 3, 6, 22-26. Counsel for Defendant provides some explanation as

to why Commerce's AFA calculation was properly corroborated, Def. Br. 27-33, but these are

*post hoc* rationalizations of agency counsel to which the court may not defer. *See Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[C]ourts may not accept

. . .  counsel's *post hoc* rationalizations for agency action."). The court must therefore remand

this issue to Commerce to consider the issue in the first instance.

       For over a decade the court has applied the *De Cecco* standard to review the

reasonableness of Commerce's AFA rate choices in antidumping proceedings. Under that

standard the court reviews whether Commerce chose a reasonably accurate estimate of the

respondent's actual dumping rate with some built-in increase to deter non-compliance. *See*

*DeCecco*, 216 F.3d at 1032. The *DeCecco* standard would seem to apply in the CVD context as

well. If Commerce believes otherwise, it can explain its inapplicability on remand. Absent a

reason to apply a different standard, the court stands ready to review whether the facts and

circumstances of the administrative record support Commerce's AFA CVD rate as a reasonably

accurate estimate of the respondent's actual benefit (under the CIP programs) plus some built in

increase to deter non-compliance, with due account for the practicability of corroboration.

       Bear in mind that the court is not rejecting the notion that Commerce may have selected a

reasonable AFA rate, but to sustain such a rate the court needs Commerce to explain (1) how it

corroborated the AFA rate assigned to Essar, <u>or</u> (2) why corroboration is not practicable. *See* 19

U.S.C. § 1677e(c); *see also Sodium Nitrite From the People's Republic of China: Final*

*Affirmative Countervailing Duty Determination*, 73 Fed. Reg. 38,981, 38,983 (Dep't Commerce

2008) ("Unlike other types of information, such as publicly available data on the national

inflation rate of a given country or national average interest rates, there typically are no

independent sources for data on company-specific benefits resulting from countervailable

subsidy programs.")

Essar also challenges Commerce's AFA rate calculation as punitive. Pl. Br. 39. The court, however, does not believe this issue has merit. Essar specifically argues that the AFA rate is punitive "considering that in past reviews Commerce never found Essar to have used the [CIP] program at issue." Pl. Br. 39 (citing *Am. Silicon Tech. v. United States*, 26 CIT 1216, 240 F. Supp. 2d 1306 (2002) ("*American Silicon*")). This therefore appears to be an argument about the sufficiency of Commerce's corroboration, not whether the selected rate is punitive. If the latter, the court would have expected far more developed argumentation and analysis of the other available rates and an explanation why the selected rate represents an unreasonable choice. *See, e.g., American Silicon*, 240 F. Supp. 2d at 1312-1313 (concluding that AFA rate was punitive by comparing assigned rate to other calculated rates from prior reviews). Essar never provides such an analysis, leaving the court to develop its own theory of why the selected rate may be punitive, effectively litigating the issue for Essar. This the court will not do. *See Home Prods. Int., Inc. v. United States*, 36 CIT __, __, 837 F. Supp. 2d 1294, 1301 (2012) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.")).

Again, the central issue here is corroboration. Commerce must corroborate Essar's AFA rate or explain why corroboration is not practicable. *See* 19 U.S.C. § 1677e(c).

### III. CONCLUSION

The court cannot sustain Commerce's AFA rate calculation in its current posture.

Accordingly, the court remands to Commerce to address the corroboration requirement under 19

U.S.C. § 1677e(c). It is hereby

**ORDERED** that this action is remanded to Commerce to address the issue of

corroboration; it is further

**ORDERED** that Commerce is to file its remand results on or before December 14, 2012;

and it is further

**ORDERED** that the parties are to file their comments (limited to 10 pages), if necessary,

no later than 45 days after Commerce files its remand results with the court.


Dated:   October 15, 2012                         ___  /s/ Judith M. Barzilay     __
             New York, New York                    Judith M. Barzilay, Senior Judge