Slip Op. 13- 48

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ESSAR STEEL LIMITED, | |
| Plaintiff, | |
| v. | Before: Judith M. Barzilay, Senior Judge |
| UNITED STATES, | Court No. 09-00197 |
| Defendant, | |
| and | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant-Intervenor. | |

**OPINION**

[Commerce's AFA rate calculation is sustained.]

Dated: April 9, 2013

*Dentons US LLP* (*Mark P. Lunn*) for Plaintiff Essar Steel Limited.

*Stuart F. Delery*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David D'Alessandris*) for Defendant United States; *Deborah King*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Skadden, Arps, Slate, Meagher, and Flom, LLP* (*Robert E. Lighthizer, Jeffrey D. Gerrish, Stephen J. Narkin,* and *Nathaniel B. Bolin*) for Defendant-Intervenor United States Steel Corporation.

     BARZILAY, Senior Judge:  This matter returns to the court following remand to the U.S. Department of Commerce ("Commerce") to address the issue of corroboration within the context

of the adverse facts available ("AFA") rate applied to Plaintiff Essar Steel Limited ("Essar") in the countervailing duty ("CVD") administrative review on certain hot-rolled carbon steel flat products from India covering the January 1, 2007, through December 31, 2007 period of review. *See Certain Hot-Rolled Carbon Steel Flat Products from India: Final Results and Partial Rescission of Countervailing Duty Administrative Review*, 74 Fed. Reg. 20,923 (Dep't Commerce May 6, 2009).[1]  Specifically, the court instructed Commerce to explain how it corroborated the AFA rate assigned to Essar for its participation in the State Government of Chahattisgarh Industrial Policy ("CIP") or why corroboration was not practicable. *See Essar Steel Ltd. v. United States*, 36 CIT __, 880 F. Supp. 2d 1327 (2012).  Commerce, in turn, filed its remand results explaining how it corroborated, to the extent practicable, the AFA rate assigned to Essar given that both Essar and the Indian government failed to cooperate during the administrative review. *See Results of Redetermination Pursuant to Court Remand* (Jan. 10, 2013) ("*Remand Results*").  Essar contends that Commerce's AFA rate is not a reasonably accurate estimate of its actual rate.  The court has jurisdiction pursuant to 28 U.S.C. 1581(c).  For the reasons set forth below, Commerce's AFA rate calculation is sustained.

## I. STANDARD OF REVIEW

When reviewing Commerce's countervailing duty determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or

---

[1] Familiarity with prior judicial decisions in this action is presumed. *See Essar Steel Limited v. United States*, 678 F.3d 1268 (Fed. Cir. 2012); *Essar Steel Limited v. United States*, 35 CIT __, 2011 WL 238657 (Jan. 25, 2011); *Essar Steel Limited v. United States*, 34 CIT __, 721 F. Supp. 2d 1285 (2010).

conclusions for substantial evidence, the court assesses whether the agency action is "reasonable and supported by the record as a whole." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal quotations and citation omitted). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dupont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

## II. DISCUSSION

In applying total adverse facts available, Commerce typically cannot calculate a rate for an uncooperative respondent because the information required for such a calculation has not been provided. As a substitute, Commerce relies on various "secondary" sources of information, 19 U.S.C. § 1677e(b) & (c), to select a proxy that should be a "reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance." *F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("*De Cecco*"). When selecting an appropriate total AFA proxy, "Commerce must balance the statutory objectives of finding an accurate dumping margin and inducing compliance. . . ." *Timken Co. v. United States*, 354 F.3d 1334, 1345 (Fed. Cir. 2004). The proxy's purpose "is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *De Cecco*, 216 F.3d at 1032. Although a higher AFA rate creates a stronger incentive to cooperate, "Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin*."*

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (citing *De Cecco* ).  "Commerce must select secondary information that has some grounding in commercial reality." *Id.* at 1324.

As *De Cecco* explained, these requirements are logical outgrowths of the statute's corroboration requirement, 19 U.S.C. § 1677e(c), which mandates that Commerce, to the extent practicable, corroborate secondary information. *See De Cecco*, 216 F.3d at 1032.  In practice "corroboration" involves confirming that secondary information has "probative value," 19 C.F.R. § 351.308(d), by examining its "reliability and relevance." *Mittal Steel Galati S.A. v. United States*, 31 CIT 730, 734, 491 F. Supp. 2d 1273, 1278 (2007) (citing *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom*, 70 Fed. Reg. 54,711, 54,712–13 (Dep't Commerce Sept. 16, 2005) (final results)).  More simply, to corroborate the selection of a total AFA rate, Commerce must (to the extent practicable), "demonstrate that the rate is reliable and relevant to the particular respondent." *Yantai Xinke Steel Structure Co. v. United States*, 36 CIT__, __ 2012 WL 2930182 at *15 (July 18, 2012).

In the CVD context, Commerce follows a hierarchy when selecting a proxy subsidy rate for an uncooperative respondent because "[u]nlike other types of information, such as publicly available data on the national inflation rate of a given country or national average interest rates, there typically are no independent sources for data on company-specific benefits resulting from countervailable subsidy programs." *Circular Welded Austenitic Stainless Pressure Pipe from the People's Republic of China, Final Affirmative Countervailing Duty Determination*, 74 Fed. Reg. 4,936 (Dep't Commerce January 28, 2009) and accompanying Issues and Decision Memorandum at Comment 12 III.B, *available at* http://ia.ita.doc.gov/frn/summary/PRC/E9-1829-1.pdf (last visited Apr. 9, 2013).  To select an AFA subsidy rate, Commerce first attempts to apply the highest, above *de minimis* subsidy rate calculated for the identical program from any

segment of the proceeding. *See Remand Results* at 5. Absent a calculated above *de minimis* subsidy rate from an identical program, the Department then seeks a subsidy rate calculated for a similar program. *Id.* Absent such a rate, the Department then resorts to the third step in its hierarchy, an above *de minimis* calculated subsidy rate for any program from any CVD proceeding involving the country in which the subject merchandise is produced, so long as the producer of the subject merchandise or the industry to which it belongs could have used the program for which the rates were calculated. *Id.*

In this case, Commerce did not apply the first step in the hierarchy and instead calculated Essar's AFA rate by aggregating nine calculated subsidy rates from programs deemed similar to the nine subprograms identified under the CIP. *See Remand Results* at 5. For each of the four subprograms identified as providing indirect tax benefits, Commerce assigned a net subsidy rate of 3.09% *ad valorem*, which was the rate calculated for Essar under the Gujarat Tax Incentives program during the second administrative review of the underlying proceeding. *Id.* at 6. On remand, Commerce explained that the Gujarat tax program is an indirect tax program that is similar to the CIP tax program, "reflecting the government of India's behavior in terms of implementing an indirect tax program." *Id*. For each of the four subprograms identified as providing benefits in the form of a grant, Commerce assigned a net subsidy rate of 6.06% *ad valorem*, which was the rate calculated for the Steel Authority of India, Ltd. under a grant program identified during the investigation. *Id.* On remand, Commerce explained that the grant program identified in the investigation is similar to the CIP grant program, "reflecting the government of India's behavior in terms of implementing a grant program." *Id.* at 6-7. For the subprogram identified as providing land for less than adequate remuneration ("LTAR"), Commerce assigned a net subsidy rate of 18.08% *ad valorem*, which was the subsidy rate calculated for a program involving the captive mining of iron ore from the fourth administrative

review of the underlying proceeding. *Id.* at 7.  The captive mining program involved the provision of goods for LTAR. *Id.*  On remand, Commerce explained that the captive mining program is similar to the CIP provision of land program, "reflecting the government of India's behavior in terms of providing a good for LTAR." *Id.* at 7.  The sum of the nine subsidy rates from similar programs is 54.68%, the AFA rate assigned to Essar for its participation in the nine CIP programs.

Essar argues that the *Remand Results* explain Commerce's AFA subsidy rate methodology but fail to corroborate the actual rate assigned to Essar. Pl. Comments 2-3.  Essar contends that Commerce did not explain how it determines whether a given subsidy program is "similar" under its hierarchy, thereby leaving the parties without sufficient information to evaluate and challenge that determination.  Pl. Comments 5.  Essar also argues that Commerce should have included in its AFA calculation information from the 2006 administrative review demonstrating that Essar did not receive benefits under the CIP programs. Pl. Comments 8-9. Essar then raises several new arguments that it failed to raise during the remand.  For example, Essar argues that Commerce (1) improperly applied the subsidy rate to the entire value of the finished merchandise; (2) failed to consider whether Essar could simultaneously have benefitted from all the programs at issue; (3) failed to consider that Essar was found to benefit from two programs that purportedly have mutually exclusive eligibility criteria; and (4) failed to consider the purported maximum benefits for certain subsidy programs. Pl. Comments 3-7.

Essar unfortunately did not present these arguments to Commerce when it had the opportunity.  Def. App'x Tab B (Essar's Comments on Draft Remand Results).  The time for Essar to raise them was in its comments before the agency on remand.  *See Mittal Steel Point Lisas v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008).  "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts

should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*." *Id.* at 1383-84 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (internal quotation marks omitted) (emphasis in original)).  "[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (internal quotation marks omitted)). Essar failed to raise these issues at the appropriate time on remand and therefore abandoned its arguments by failing to exhaust its administrative remedies before Commerce. *See id.* The court will therefore treat those arguments as waived.

On the issue of corroboration, Commerce did corroborate Essar's AFA rate to the extent practicable under 19 U.S.C. § 1677e(c). Essar (the only respondent) did not cooperate in the administrative review, where it might have provided company-specific information concerning the extent to which it received benefits under the CIP programs. The Indian government also did not cooperate with Commerce's requests for information about the CIP programs. Given that Commerce did not calculate CVD rates for those specific programs in a prior proceeding, Commerce had limited available data (from any proceeding) about the CIP programs. To select a rate, therefore, Commerce followed its practice of identifying calculated subsidy rates from "similar" programs. The AFA methodology Commerce applies in CVD proceedings "relies on the premise that the behavior of the government . . . with regard to companies investigated in another segment of a same proceeding, or alternatively with regard to companies in another proceeding, provides a reasonable estimate of the level of subsidization provided by the government in the case at issue. Moreover, where possible, we base this principal of our CVD AFA methodology on the type of benefit provided under the subsidy programs at issue." *Remand Results* at 11. Commerce explained that it identified programs involving the same type of

subsidy activity by the Indian government, *i.e.*, programs involving indirect tax, grants, and LTAR. *Id.* Commerce maintains that this satisfies the corroboration requirement because each proxy rate had been calculated for a respondent (reliable) and derived from the same type of program (relevant). *Id.*

Essar, though, claims that Commerce must better explain its methodology for selecting an AFA subsidy rate and demonstrate how the 54.68% rate reflects commercial reality. The court is not persuaded that this is necessary. There is no company-specific data available on the record concerning Essar's participation in the CIP programs. The limited data are largely due to Essar's lack of cooperation during the review. *See Essar Steel Limited*, 678 F.3d at 1277 ("It is Essar's burden to create an accurate record during Commerce's investigation. Commerce must consider all information timely filed by interested parties. The trial court then reviews the record, which consists of a copy of all information presented to or obtained by [Commerce] during the course of the administrative proceeding. The record on review did not include Essar's request for benefits under the CIP, nor the government of Chhattisgarh's denial of those benefits. The record on review included Essar's repeated dishonest denials of a facility in Chhattisgarh, as well as Commerce's questionnaire including a press release contradicting those statements.") (internal citations and quotation marks omitted). Essar cannot now claim that it is entitled to a more probative rate when it is responsible for the lack of company-specific information that might have yielded such a rate. This, along with the Indian government's lack of cooperation, left Commerce little choice but to select rates from "similar" programs identified in prior proceedings. The rates selected are from programs that generally provide the same type of benefits (*i.e.*, indirect tax, grants, and LTAR) and may therefore be deemed "similar" to the programs provided under the CIP. Commerce reasonably inferred that the benefits received for similar programs by other Indian producers (including Essar) of hot-rolled carbon steel

approximated the benefits received by Essar for the CIP programs. Therefore, the rates selected are reliable (derived from calculated rates) and relevant (derived from the same type of programs). The aggregated rate (*i.e.*, the sum of the highest above *de minimis* rates for similar programs) is a reasonable approximation of Essar's actual benefit (albeit with some built-in increase to deter non-compliance) given the limited choices available to Commerce in this review.

Essar, for its part, has not offered an alternative rate that would be more probative of its actual benefit. Instead, Essar continues to urge Commerce to consider information from the previous administrative review, which indicates that it applied for and was denied benefits under the CIP programs (suggesting a 0% benefit). Def Comments 9. This information, however, surfaced during the course of a remand (involving the prior review) several months <u>after</u> Commerce completed this review. Commerce determined, and the Federal Circuit agreed, that it was not appropriate to reopen the record to include information that Essar could have timely filed during this review. *See Essar*, 678 F.3d at 1276-77. The information cited by Essar is not a potential source of secondary information in this case because it came to light long after the administrative review had been completed. Accordingly, Commerce corroborated Essar's AFA rate to the extent practicable by utilizing calculated benefits from similar subsidy programs identified in this CVD proceeding. *See* 19 U.S.C. § 1677e(c). Indeed, the Federal Circuit (albeit in dicta) has already signaled that Commerce's AFA calculation is reasonable. *See Essar*, 678 F.3d at 1276 ("[T]he countervailing duty imposed for Essar's participation in the CIP was on par with similar subsidy programs and therefore not punitive.").

## III. CONCLUSION

For these reasons, Commerce's *Remand Results* are sustained. Judgment will be entered accordingly.

Dated:   April 9, 2013   /s/ Judith M. Barzilay
        New York, New York        Judith M. Barzilay, Senior Judge

Slip Op. 13-48

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ESSAR STEEL LIMITED, | |
| Plaintiff, | |
| v. | Before: Judith M. Barzilay, Senior Judge |
| UNITED STATES, | Court No. 09-00197 |
| Defendant, | |
| and | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant-Intervenor. | |

## JUDGMENT

Upon consideration of the U.S. Department of Commerce's *Remand Results*, filed January 10, 2013, Plaintiff's Comments, and all other papers filed in this action, and upon due deliberation, it is hereby

**ORDERED** that Commerce's *Remand Results* are sustained.

Dated: April 9, 2013      /s/ Judith M. Barzilay
New York, NY       Judith M. Barzilay, Senior Judge